IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN BEADLE,

       Plaintiff,

       v.

UNIFIED SCHOOL DISTRICT NO. 204,
WYANDOTTE COUNTY, STATE OF
KANSAS,

       Defendant.

Case No. 26-2055-JAR-BGS

## MEMORANDUM AND ORDER

Plaintiff Steven Beadle brings this action against his former employer, Defendant Unified School District No. 204, Wyandotte County, State of Kansas ("USD 204"), alleging a claim of disability discrimination under the Americans with Disabilities Act ("ADA"),[1] as amended by the ADA Amendments Act of 2008 ("ADAAA"),[2] and a claim of workers' compensation retaliation under Kansas law.  Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 10).  The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the Court denies Defendant's motion.

## I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[3] and must include "enough facts to state a claim to relief that is plausible on its face."[4]

---

[1] 42 U.S.C. §§ 12101–12213.

[2] Pub. L. No. 110-325, 122 Stat. 3553.

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Wright & Miller's Federal Practice & Procedure § 1216 (3d ed. 2004)).

[4] *Id*. at 570.

The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5]  "Thus, mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6]  The court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  First, the court "must take all of the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II.    Background

The following facts are alleged in Plaintiff's First Amended Complaint.[11]  For the purposes of deciding this motion, the Court assumes these facts to be true.

Plaintiff began working for USD 204 in July 2023 as Lead Plumber.  On Friday, August 9, 2024, Plaintiff was in a motor vehicle accident while driving one of the school district's vans. He called his supervisor, Scott Bennett, who arrived on the scene and was present when police

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6] *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (citation modified).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[9] *Id*. at 679.

[10] *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] Doc. 10.

arrived.  The responding police officer told Plaintiff, in Bennett's presence, that Plaintiff had not been at fault because the other driver failed to stop at a stop sign and hit the van Plaintiff was driving.

That weekend, Plaintiff experienced headaches and body aches, particularly in his neck and back.  He also vomited and ran a high fever.  He opted to wait until the following Monday to go to the emergency room because he believed his symptoms were caused by the accident and would therefore be covered  by workers' compensation insurance.

On Monday, August 12, 2024, Plaintiff told Bennett about his symptoms over the weekend and asked to see a doctor as a result of the car accident.  Bennett told Plaintiff that he did not need to see a doctor, that he would be fine, and to "quit being a pussy," "quit bitching and whining," and "suck it up."[12]  He told Plaintiff that it is normal to feel sore for a few days after a car accident.  Bennett then sent Plaintiff to one of the district high schools to move heavy furniture.  When Plaintiff told Bennett that he was having trouble moving and lifting the furniture and again asked to see a doctor, Bennett asked Plaintiff whether he was refusing to move the furniture as instructed.  Plaintiff understood this to mean that Plaintiff would be disciplined for insubordination if he refused, so he did as he was instructed, despite the pain it caused.

On each of the following three days, August 13–15, Plaintiff told Bennett he needed to see a doctor.  Bennett ignored Plaintiff's requests.  On August 15, Bennett instructed Plaintiff to move a cooler weighing several hundred pounds at another district high school.  Plaintiff again reminded Bennett of his injuries and his need to see a doctor, and Bennett again ignored Plaintiff's request.

---

[12] *Id.* ¶ 20.

On August 16, 2024, Bennett texted Plaintiff and instructed him to report to the front office conference room.  Bennett and the Director of Human Resources & Administrative Services, Sarah Armstrong, were present when he arrived.  Armstrong provided Plaintiff with a letter telling him he was suspended, effective immediately, and that there would be a recommendation to the Board of Education that he be terminated.  When Plaintiff asked why, Armstrong told Plaintiff that she did not need to provide a reason because Kansas is a right-to-work state.

On August 19, 2024, Defendant terminated Plaintiff.  After his termination, Plaintiff sought medical treatment and was diagnosed with several health issues related to the August 9 accident: mild traumatic brain injury, spinal sprain/strain, right paracentral disc herniation, a disc bulge on his lumbar spine, cervical paresthesia C5–7, cervical facet arthropathy, lumbar facet arthropathy, lumbar paresthesia L4–5, and occipital neuralgia.

## III.     Discussion

Defendant moves to dismiss Plaintiff's ADA discrimination claim[13] and contends that the Court should decline to exercise supplemental jurisdiction over the remaining state law claim.  In *Khalik v. United Air Lines*,[14] the Tenth Circuit provided an extensive analysis of the pleading standard for employment discrimination and retaliation claims under *Twombly*.[15]  The court was careful to note that under *Twombly*, the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a claim of discrimination.[16]  Instead, he is only required

---

[13] Defendant also moves to dismiss a failure-to-accommodate claim under the ADA.  Because Plaintiff does not allege this claim, the Court need not address it.  *See* Doc. 17 at 2.

[14] 671 F.3d 1188 (10th Cir. 2012).

[15] *Id.* at 1193–94.

[16] *Id.* at 1193.

to "set forth plausible claims."[17]  Nevertheless, "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim."[18]  Therefore, the Court considers the prima facie elements of Plaintiff's ADA discrimination claim to help determine if Plaintiff's First Amended Complaint meets the motion-to-dismiss standard.

To show a prima facie case of disability discrimination, the plaintiff must demonstrate "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified for the job held or desired; and (3) that he was discriminated against because of his disability."[19]  Defendant challenges the first and third elements of Plaintiff's prima facie case.

### 1.    Disability

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[20]  The 2008 amendments to the ADA make establishing a disability easier for plaintiffs and were intended to ensure that "the definition of disability . . . shall be construed in favor of broad coverage."[21]  Plaintiff asserts that he has pled facts to support an actual disability, and that Defendant regarded him as having an impairment.

#### a.    Actual Disability

Defendant argues that Plaintiff provides only conclusory assertions of an actual disability, and that he could not have had an actual disability since he was not diagnosed until after his termination.  The Court disagrees that Plaintiff's factual assertions to support his actual disability

---

[17] *Id.*

[18] *Id.* at 1192.

[19] *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (citation modified).

[20] 42 U.S.C. § 12102(1).

[21] *Id.* § 12102(4)(A).

are conclusory.  The applicable regulations define physical or mental impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."[22]  Plaintiff pleads that he had physical impairments caused by a car accident on August 9, 2024—he suffered from a high fever, vomiting, headaches, and body aches, specifically in his neck and back.  These factual assertions are entitled to an assumption of truth and suffice to plausibly demonstrate that Plaintiff had an impairment.

Plaintiff also alleges that these impairments substantially limited his ability to perform major life activities.[23]  Major life activities include such functions as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[24]  A plaintiff is "not required to provide a precise description of the major life activity allegedly affected by [the plaintiff's] disability" at the pleading stage,[25] but the plaintiff does need to make more than a conclusory allegation that the condition substantially limited him in a major life activity "as compared to most people in the general population."[26]  Plaintiff specifically pleads that on two occasions, Bennett directed him to perform heavy lifting that he was unable to do

---

[22] 29 C.F.R. § 1630.2(h)(1).

[23] Whether or not an impairment "substantially limits" a major life activity "is not meant to be a demanding standard," and "should not demand extensive analysis."  29 C.F.R. § 1630.2(j)(1)(i), (iii).

[24] 42 U.S.C. § 12102(2)(A).

[25] *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 832 n.5 (10th Cir. 2011).

[26] *Castro v. Dot's Pretzels, LLC*, No. 20-2579-JWB, 2021 WL 3674739, at *7 (D. Kan. Aug. 19, 2021).

without pain and discomfort.  This is sufficient to plead that his impairment substantially limited a major life activity.

Defendant next argues that even if Plaintiff's assertions are not considered conclusory, Plaintiff's actual disability claim fails because he was diagnosed after the adverse employment action.  The Court agrees with Plaintiff that his diagnosis does not bear on whether he has sufficiently pled an actual disability.  In fact, "[w]ithout facts regarding the extent of the limitations caused by the impairment, a medical diagnosis alone is insufficient to allege a disability."[27]  As stated above, Plaintiff has alleged sufficient facts to support a physical impairment that substantially interfered with his daily life activities.  A specific medical diagnosis was not required.

### b.    Regarded-As Having an Impairment

Plaintiff also alleges that he was "regarded as" having an impairment under 42 U.S.C. § 12102(1)(C), which does not require a showing that the condition substantially impaired one or more major life activities.[28]  To show that the employer regarded Plaintiff as having an impairment, he must show that (1) he has an actual or perceived impairment, (2) the impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action.[29]

Defendant only challenges whether Plaintiff sufficiently alleges that it was aware of his impairments.  The Court finds that Plaintiff's allegations are sufficient: Bennett was present at the accident site, Plaintiff told Bennett about his impairments related to the accident on August

---

[27] *Johnson v. BlueCross Blueshield Kan. Sols., Inc.*, No. CV 24-4053-KHV, 2024 WL 4679215, at *7 (D. Kan. Nov. 5, 2024) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010)).

[28] 42 U.S.C. § 12102(3).

[29] *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016).

12, 13, 14, and 15, 2024, and Plaintiff repeatedly told Bennett that he needed medical attention before he was terminated on August 19.  At the pleading stage, these facts are sufficient to demonstrate that the employer was aware of and therefore perceived Plaintiff's impairment before he was terminated.  That Bennett initially told Plaintiff to "suck it up" and then ignored Plaintiff's repeated attempts to tell him about his impairment for several days in a row does not negate his awareness of Plaintiff's impairment.  To the extent Defendant disputes the employer's subjective belief that Plaintiff was impaired, that is a factual question that is more appropriately addressed at the summary judgment stage.  At the pleading stage, the Court accepts Plaintiff's allegations as true.

### 2.    Causation

Finally, Defendant argues that because Plaintiff was not diagnosed until after he was terminated, his disability could not have caused his termination.  Under the third element of the prima facie case, the focus is "whether the circumstances surrounding the adverse employment action 'give rise to an inference that the [action] was based on [the plaintiff's] disability.'"[30]  One way to show this is through "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus."[31]  Plaintiff adequately pleads that Bennett's actions or remarks could be viewed as reflecting a discriminatory animus.  When Plaintiff reported his impairments to him, Bennett downplayed them and accused Plaintiff of being weak.  When Plaintiff asked not to lift heavy objects and to see a doctor, Bennett reported him to HR and he was immediately suspended and ultimately terminated.  These facts could be viewed as reflecting the employer's discriminatory bias, regardless of his lack of a definitive diagnosis.

---

[30] *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1192–93 (10th Cir. 2018) (alteration in original) (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014)).

[31] *Id.* at 1193 (quoting *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)).

Plaintiff may also be able to prove that he was terminated because of his disability based on the extremely close temporal proximity between his repeated reports of impairment and his suspension and then termination.  According to the First Amended Complaint, within days of Plaintiff reporting serious impairments due to his accident driving a district vehicle and requesting to see a doctor by filing a workers' compensation claim, he was suspended by the HR manager and given no explanation other than that Kansas is a right-to-work state.  These facts plausibly give rise to a claim that his termination was based on his complaints of symptoms and request for medical attention.[32]

In sum, Plaintiff has pled facts to support a plausible claim of disability discrimination under the ADA.  And because he sufficiently pleads a plausible federal claim, the Court need not consider Defendant's request that the Court decline to exercise supplemental jurisdiction over the state law claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 10) is **denied**.

**IT IS SO ORDERED.**

Dated: June 3, 2026

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[32] *See Buhrman v. Aureus Med. Grp.*, 519 F. Supp. 3d 923, 931 (D. Colo. 2021) (explaining that the Tenth Circuit analyzes temporal proximity in claims for "straightforward discrimination").